UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-CV-24136-MOORE
(CASE NO.: 18-CR-20514-MOORE)
MAGISTRATE JUDGE REID

CARLOS J. GARCIA,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

Movant, **Carlos Garcia,** has filed this *pro se* Motion to Vacate pursuant to 28 U.S.C. § 2255, attacking the constitutionality of his sentence for conspiracy to commit healthcare fraud, entered following a guilty plea in **Case No. 18-CR-20514-MOORE**. This cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B), (C); S.D. Fla. Admin. Order 2019-02; and Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts. [ECF No. 2]. For the reasons below, Movant is not entitled to relief.

### II. Claims

Construing the § 2255 Motion liberally as afforded *pro se* litigants pursuant to *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972), Movant raises two grounds for relief:

1. His lawyer was ineffective for misadvising him as to the total loss amount he agreed to as part of the plea agreement [ECF No. 1 at 4]; and,

2. His lawyer was ineffective for failing to give him a copy of a signed document in Spanish [ECF No. 1 at 5].

### III. Procedural Background

A.    <u>Indictment and Change of Plea Hearing</u>

Movant was initially charged by indictment with conspiracy to commit health care fraud and wire fraud (Count 1), in violation of 18 U.S.C. § 1349, health care fraud, in violation of 18 U.S.C. § 1347 (Counts 2-10). [CR-ECF No. 3].

On August 28, 2018, Movant executed a stipulated Factual Proffer [CR-ECF No. 48], which stated as follows.

> Beginning in or around 2012 and continuing through in or around 2018, Defendant conspired to commit health care fraud through the submission of false and fraudulent claims to the Medicare Part D prescription drug program. Between 2012 and 2018, Defendant was the owner and operator of Capital Drugs, Inc., Green Hope Pharmacy, Inc., and American Drugs Pharmacy, Inc., all retail pharmacies located in the Southern District of Florida. Defendant was the sole officer, director, and registered agent of Capital Drugs, while Green Hope Pharmacy and American Drugs Pharmacy were incorporated in the names of other co-conspirators.
>
> Throughout their existences, Capital Drugs, Green Hope Pharmacy and America Drugs were enrolled in the Medicare Part D prescription drug program, which is a health care benefit program as defined in 18 U.S.C. § 24(b). Using these pharmacies, Defendant conspired with Heidy Garcia, Gisell Aberasturia, Kenia Martinez, Yakiely Cepero and others to engage in a scheme to defraud the Part D program through the submission of false and fraudulent claims to the program. As part of the scheme, Defendant paid cash kickbacks to patient recruiters for referring fraudulent prescriptions for Medicare beneficiaries to the pharmacies.
>
> Using those fraudulent prescriptions, Defendant and others, including Gisell Aberasturia, Kenia Martinez, Yakiely Cepero and Heidy Garcia, submitted, and caused the submission of, claims to the Part D program for drugs that were never dispensed to the Medicare beneficiaries (including those claims set forth in counts 2-10 of the indictment). In fact, as Defendant was well aware, the pharmacies never ordered many of the drugs from wholesalers to begin with, and therefore never had the drugs to dispense. Based on an analysis of the drugs that were purchased by Capital Drugs, Green Hope Pharmacy and American Drugs, compared to the drugs alleged to have been dispensed by the three pharmacies and paid for by the Part D program, the actual loss to the Part D program is $2,572,916. From these proceeds, Defendant received approximately $1,120,862 in checks from the pharmacies.

[*Id.* at 1-3].

Movant also entered into a Plea Agreement, agreeing to plead guilty to Count 1 of the indictment in exchange for the Government agreeing to dismiss the remaining counts after sentencing. [CR-ECF No. 47 at 1]. As part of the terms of the Plea Agreement, the parties jointly agreed to recommend the following: (a) a base level of 6 pursuant to U.S.S.G. § 2B1.1(a)(2); (b) the actual loss to Medicare was more than $1,500,000 but less than $3,500,000, resulting in a 16-level enhancement under U.S.S.G. § 2B1.1(b)(1)(I); and, (c) the offense of conviction is a federal health care offense involving a government health care program, which resulted in a loss to the government of more than $1,000,000 but less than $7,000,000 resulting in a two-level enhancement under U.S.S.G. § 2B1.1(b)(7). [*Id*. at 3-4]. Plaintiff also understood that he was agreeing to the entry of a forfeiture money judgment against him in the amount of $1,120,862, which equaled the value of the gross proceeds traceable to the commission of the violation. [*Id*. at 5-6]. The Government and Movant agreed that the amount of restitution that Movant was required to pay was approximately $2,572,916. [*Id*. at 8].

On the same date that he signed the Plea Agreement and Factual Proffer, a change of plea proceeding was conducted in accordance with Fed. R. Crim. P. 11 before United States Magistrate Judge Andrea Simonton. [CR-ECF No. 104]. Movant was provided an interpreter during the hearing. [*Id.* at 4]. Under oath, Movant provided background educational information to the Court, and denied currently being under the influence of any drug, alcohol, or medication. [*Id.* at 6, 10]. Movant acknowledged that he had sufficient time to discuss the case with his attorney and was satisfied with his representation. [*Id*. at 10-11].

Movant acknowledged that he signed the Plea Agreement after having an opportunity to read and discuss it with his lawyer. [*Id*. at 15]. Movant's counsel stated that he is fluent in Spanish and interpreted the Plea Agreement "word for word" prior to Movant signing it. [*Id*. at 16]. Movant

3

understood that he was pleading guilty to Count 1 of the indictment. [*Id*. at 21]. Movant also understood that he was agreeing that his participation in the conspiracy caused and actual loss to Medicare of between $1,500,000 and $3,500,000, resulting in a 16-level enhancement. [*Id.* at 24-25]. Movant acknowledged that he was agreeing to a forfeiture money judgment against him in the amount of $1,120,862 [*Id*. at 31], and to restitution in the amount of approximately $2,572,916. [*Id*. at 35]. Movant indicated that he had no questions for the Court regarding any of the Plea Agreement's terms. [*Id.* at 36].

Regarding the Factual Proffer, Movant acknowledged that he read it and reviewed it with his attorney before signing it. [*Id*. at 44-45]. He admitted that everything in the Factual Proffer was true and correct. [*Id*. at 45]. When the prosecutor read the Factual Proffer to the Court, he expressly noted that the amount of loss attributable to Movant was $2,572,916. [*Id*. at 53]. When the Court asked Movant if everything the prosecutor stated regarding the Factual Proffer was true and correct, Movant responded "yes." [*Id.* at 54].

Movant further denied being coerced or threatened to enter his plea. [*Id*. at 42]. Movant admitted that his guilty plea was being entered freely and voluntarily. [*Id*. at 43]. Regarding the consequences of his plea, Movant also understood that he was giving up valuable civil rights, such as the right to vote, to hold public office, to reside in public housing, and to own a firearm. [*Id.*].

Regarding the waiver of his constitutional rights, Movant agreed he had the right to plead not guilty, and have a trial by jury, requiring the Government to prove the charges beyond a reasonable doubt. [*Id*. at 59-60]. In that regard, Movant understood he had the right to an attorney to assist in his defense, to cross-examine prosecution witnesses, present witnesses on his own behalf, and to testify on his own behalf at trial. [*Id*.]. Movant acknowledged that he was waiving these various rights as a result of his guilty plea. [*Id*. at 60].

When asked how he wished to plead to the charge, Movant responded "Guilty." [*Id*. at 61].

The Court then found Movant fully competent and capable of entering an informed plea, that Movant was aware of the nature of the charges and the consequences of the plea, and that his guilty plea was knowing and voluntary, supported by an independent basis in fact, containing each of the essential elements of the offense. [*Id*. at 62]. As a result, the Court accepted the Movant's plea and adjudicated him guilty of Count 1 as set forth in the indictment. [*Id*.].

B.   Pre-Sentence Investigation Report and Sentencing Hearing

The PSI set Movant's sentencing guideline range at 70 to 87 months. (PSI ¶ 83). Statutorily, Movant faced a maximum term of imprisonment of 10 years. (PSI ¶ 82).

On November 6, 2018, the District Court sentenced Movant to 87 months' imprisonment, to be followed by 3 years of supervised release. [CR-ECF No. 84; ECF No. 8-7]. Movant was also ordered to pay restitution in the amount of $2,572,916. [*Id*.].

C.   § 2255 Motion

Movant did not file a direct appeal. He timely filed his Motion to Vacate on October 3, 2019.[1] [ECF No. 1 at 12].

**IV. Standard of Review**

A.   Section 2255

Because collateral review is not a substitute for appeal, the grounds for collateral attack on a final judgment, pursuant to 28 U.S.C. § 2255, are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is

---

[1] "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); *see also* Fed. R. App. P. 4(c)(1)("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing.").

otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *see also McKay v. United States,* 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). Thus, relief under § 2255 is reserved for transgressions of constitutional rights, and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *See Lynn v. United States,* 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 165 (1982). If a court finds a claim under § 2255 valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner, grant a new trial, or correct the sentence." 28 U.S.C. § 2255(b). The burden of proof is on Movant, not the Government, to establish that vacatur of the conviction or sentence is required. *See Beeman v. United States,* 871 F.3d 1215, 1221-22 (11th Cir. 2017).

B.  Guilty Plea Principles

Because a guilty plea waives certain constitutional rights, before it is accepted, the Court must ensure that the waiver is a voluntary, knowing, and intelligent act, done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *See Hill v. Lockhart,* 474 U.S. 52, 56 (1985); *see also United States v. Ruiz,* 536 U.S. 622, 629 (2002). To be knowing and voluntary: (1) a plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. *See United States v. Moriarty,* 429 F.3d 1012, 1019 (11th Cir. 2005).

After the plea has been entered, a criminal defendant may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only: (1) raise jurisdictional issues, *United States v. Patti,* 337 F.3d 1317, 1320 (11th Cir. 2003); (2) attack the voluntary and knowing character of the guilty plea, *Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *Wilson v. United States,* 962 F.2d 996, 997 (11th Cir. 1992); or, (3) challenge the

constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, *United States v. Fairchild,* 803 F.2d 1121, 1123 (11th Cir. 1986). Thus, a voluntary and intelligent guilty plea must stand unless induced by misrepresentations made to the accused by the court, prosecutor, or his own counsel. *See Brady v. United States,* 397 U.S. 742, 748 (1970).

Courts apply a "strong presumption" that statements made by a defendant during a change of plea colloquy are true. "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

C.   Ineffective Assistance of Counsel Principles

Regarding claims challenging counsel's effectiveness, the law is well settled that a criminal defendant is entitled to the effective assistance of competent counsel before deciding whether to plead guilty. *Lee v. United States,* 582 U.S. ___, 137 S. Ct. 1958, 1964 (2017). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *see also Harrington v. Richter*, 562 U.S. 86, 104 (2011). If a movant cannot meet one of *Strickland's* prongs, the court does not need to address the other. *Strickland*, 466 U.S. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *see also Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). To establish prejudice, the movant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694; *see also Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v.*

*Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). In the context of a guilty plea, application of the second prong of the two-prong *Strickland* standard requires a showing that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 52.

Movants bear the burden of proof in habeas proceedings. See *Beeman*, 871 F.3d at 1221-22. In fact, federal courts regularly deny ineffective assistance of counsel claims on the basis that the allegations are too general, too conclusory, or too vague to warrant relief. *See, e.g., Price v. Allen*, 679 F.3d 1315, 1325 (11th Cir. 2012) (reaching this conclusion in a § 2254 context). Denying on this basis is appropriate because, unlike the "notice pleading" standard authorized under Fed. R. Civ. P. 8, a "heightened pleading" requirement exists in § 2254 and § 2255 proceedings. *See Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011).

## V. Discussion

In **Claim 1**, Movant alleges that his lawyer misadvised him that the Plea Agreement held him accountable for $1,120,862, when in actuality, Movant was "sentenced for $2,572,916.00." [ECF No. 1 at 4]. Movant claims he was not aware of this fact because he does not read, speak or write English. [*Id.*]. Moreover, his attorney failed to provide him a copy of the paperwork he signed in Spanish, even though he promised to do so. [*Id.*]. Relatedly, in **Claim 2**, Movant alleges that his lawyer was ineffective for failing to provide him a Spanish translation of the written Plea Agreement to review. [*Id.*]. Based on these facts, Movant claims his lawyer was constitutionally ineffective. [*Id.*].

Movant's claims fail primarily because he cannot demonstrate any prejudice under the second prong of *Strickland*. He fails to plead any facts to suggest that but for counsel's alleged misadvice, he would not have pled guilty and would have instead gone to trial. *See Hill*, 474 U.S.

at 59. As noted by the Respondent in its Response, there is no reasonable basis to believe that Movant would have insisted on going to trial simply because he disagreed with the loss amount calculation in the Plea Agreement. [ECF No. 8 at 7]. He does not allege that he wished to proceed to trial nor that he had a viable defense to the charges. In fact, although Movant could have potentially received a two-level decrease in offense level had he been credited with a loss amount of $1.1 million instead of $2.5 million if he proceeded to trial, he would not have been afforded a three level reduction for acceptance of responsibility under the Guidelines. Accordingly, with no potential defense to the charges, counsel's advice to Movant to plead guilty, under the terms of the Plea Agreement, was not patently unreasonable.

Moreover, even if counsel's performance could somehow be deemed deficient for failing to advise Movant appropriately regarding the stipulated loss amount in the Plea Agreement or for failing to provide him a translated copy of the agreement, any such deficiency was cured by the Court's thorough plea colloquy. At the change of plea hearing, the Court specifically informed Movant during the change of plea hearing that he would be held responsible for an actual loss amount of $2,572,916. [CR-ECF No. 104 at 35]. He expressly agreed that this fact was true and correct as contained the Factual Proffer. [*Id.* at 53-54]. Movant also agreed that he was being held accountable for a loss amount of between $1.5 million and $3.5 million dollars. [*Id.* at 24-25]. Movant had the assistance of a court interpreter at the hearing. [*Id.* at 4]. Thus, even if counsel could somehow be deemed ineffective for failing to accurately translate the Plea Agreement into Spanish prior to the hearing, any such defect was cured by the Court's colloquy in which he acknowledged, under oath, that he understood he would be held accountable for the total loss amount. *See e.g. Stillwell v. United States*, 709 F. App'x 585, 590 (11th Cir. 2017) ("Because the district court explained the sentencing and appeal-waiver provisions of the plea agreement to

9

Stillwell, and Stillwell stated under oath that he understood them, any misunderstanding created by counsel's advice was remedied by the district court."). Because Movant wholly fails to meet his burden of demonstrating deficient performance or prejudice under *Strickland*, the Motion should be denied.[2]

### VI.     Evidentiary Hearing

Movant is also not entitled to an evidentiary hearing on the claims raised in this proceeding. Movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. *See Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007) (holding that if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing); *see also Townsend v. Sain*, 372 U.S. 293, 307 (1963); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (holding that § 2255 does not require that the district court hold an evidentiary hearing every time a Section 2255 petitioner simply asserts a claim of ineffective assistance of counsel, and stating: "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.").

---

[2] To the extent that Movant raises new grounds for relief in his Reply [ECF No. 9 at 4], including an ineffective assistance of counsel claim regarding the sophisticated means enhancement applied in his case, such a claim should be rejected because it was not presented to the Court in the first instance. The law is well settled that a reply is not the proper vehicle to raise for the first-time new arguments for relief. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (traverse is not proper pleading to raise additional grounds for relief); *see also, Klauer v. McNeil*, No.3:07CV541, 2009 WL 2399928, at *30 (N.D. Fla. July 31, 2009); *Cleckler v. McNeil*, No.3:07CV283, 2009 WL 700828, at *11 n.4 (N.D. Fla. Mar. 16, 2009). The Eleventh Circuit, in an analogous situation has determined that "[s]imilar considerations bar an appellant from raising a new issue in a reply brief." *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338 (11th Cir. 2015) (arguments raised for the first time in a reply brief are not properly before a reviewing court); *see also United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) (citation omitted).

### VII. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying her petition for writ of habeas corpus had no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. §2253 (c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a COA only if the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253 (c)(2). Where a district court has rejected a movant's constitutional claims on the merits, the movant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

Upon consideration of the record as a whole, this Court should deny a certificate of appealability. Notwithstanding, if Movant does not agree, he may bring this argument to the attention of the District Judge in objections.

### VIII. Recommendations

Based on the above, it is **RECOMMENDED** that the Motion to Vacate [ECF No. 1] be **DENIED** on the merits; that final judgment be entered; that no certificate of appealability issue; and, that the case closed.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal

conclusions." *See* 11th Cir. R. 3-1 (2016); *see also* 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

SIGNED this 1st day of February, 2021.

UNITED STATES MAGISTRATE JUDGE

cc: **Carlos J. Garcia**
18773-104
D. Ray James
Correctional Institution
Inmate Mail/Parcels
Post Office Box 2000
Folkston, GA 31537
PRO SE

**Jon Milton Juenger**
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
305-961-9450
Fax: 305-530-6168
Email: Jon.Juenger@usdoj.gov